30 F.3d 139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
GULF INSURANCE COMPANY, Plaintiff-Appellant,
v.
INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, Defendant-Appellee.
GULF INSURANCE COMPANY, Plaintiff-Appellee,
v.
INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, Defendant-Appellant.
 Nos. 92-36900, 92-36901.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 15, 1994.
Decided Aug. 4, 1994.
 
 Before: TANG, FERGUSON, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The City of McMinnville, Oregon, was one of many defendants in the Washington Public Power Supply System Securities litigation ("WPPSS"). McMinnville was covered by three insurance policies: Gulf's Comprehensive General Liability Insurance policy ("Liability policy"), International Surplus Lines Insurance Company's ("ISLIC") Public Officer's and Employees Insurance Policy, and Gulf's Commercial Umbrella Catastrophe Liability policy ("Umbrella policy"). McMinnville tendered its defense in the WPPSS litigation to both Gulf and ISLIC.
 
 
 3
 The claims against McMinnville were ultimately settled for $4.66 million with Gulf and ISLIC each contributing $2.33 million, "with the respective monetary responsibility of Gulf and ISLIC to be resolved thereafter." Gulf also paid $665,964.08 in attorneys' fees pursuant to its Liability policy.
 
 
 4
 Gulf filed a declaratory judgment action in district court seeking a declaration of the insurers' rights and obligations under the three policies. The district court issued several opinions and orders ruling on the parties' cross motions for summary judgment. The following holdings of the district court are now on appeal: (1) Gulf's Liability policy must contribute its entire limit to the settlement and the remaining amount of the settlement should be prorated between ISLIC's policy and Gulf's Umbrella policy, (2) pursuant to ISLIC's policy language, a limit of liability of $15 million applied to the claim at issue, (3) Gulf was not entitled to prejudgment interest, (4) only Gulf's 1980-1981 and 1981-1982 Liability and Umbrella policies were invoked, and (5) the same analysis should be used to prorate attorneys' fees between the policies as the court used to prorate the settlement amount. We affirm.
 
 I.
 
 5
 It is undisputed that Gulf's Liability policy provided primary coverage. Therefore, pursuant to Liberty Mutual Ins. Co. v. Truck Ins. Exchange, 420 P.2d 66, 69 (Or.1966), the district court properly exhausted the limits of that policy before invoking coverage under the other policies.
 
 
 6
 In dividing the remainder of the settlement between Gulf's Umbrella policy and ISLIC's policy, the district court correctly relied on Lamb-Weston v. Oregon Auto. Ins. Co., 341 P.2d 110, modified, 346 P.2d 643 (1959). In Lamb-Weston, the Oregon Supreme Court held that when, as here, two policies insure against the same loss and it is impossible for the court to give effect to the "other insurance" clauses of both policies, these clauses are repugnant and should be disregarded. 341 P.2d at 119. The loss should be prorated between the policies in the same proportion that the policy limit of each policy bears to the aggregate limit of both policies. 346 P.2d at 647.
 
 
 7
 We affirm the district court's conclusion that the "other insurance" clauses of Gulf's Umbrella policy and ISLIC's policy are repugnant. Any attempt to reconcile these would be futile. The district court correctly disregarded these clauses and prorated the remainder of the settlement between these two policies.
 
 II.
 
 8
 Gulf appeals the district court's holding that there was only $15 million of coverage available under the ISLIC policy. The policy language limited ISLIC's liability to $15 million for "each loss." Loss was defined as "any amount which the Insureds are legally obligated to pay ... for any claim or claims made against them, for Wrongful Acts." Thus, there could be no loss until a claim was made. Under such a "claims made" policy, coverage is triggered not by the date of the wrongful act but by the date the claim is made. See e.g., Gilliam v. American Cas. Co., 735 F.Supp. 345, 350-52 (N.D.Cal.1990).
 
 
 9
 The only claims made in this litigation were received during one policy period and, therefore, only one year of coverage was invoked with a $15 million limit of liability. The district court's holding is affirmed.
 
 III.
 
 10
 The district court denied Gulf's request for an award of prejudgment interest on ISLIC's share of the WPPSS settlement and attorneys' fees paid by Gulf. A district court's denial of an award of prejudgment interest is reviewed for abuse of discretion. Mutuelles Unies v. Kroll & Linstrom, 957 F.2d 707, 714 (9th Cir.1992).
 
 
 11
 Oregon law allows an award of prejudgment interest when the exact amount owed and the date from which interest runs is ascertainable. Trienco, Inc. v. Applied Theory, Inc., 794 P.2d 1239, 1243 (Or.App.1990). The purpose of prejudgment interest is "to compensate the wronged person for being deprived of the monetary value of the loss from the time of the loss to the payment of the money judgment." Turner v. Japan Lines, Ltd., 702 F.2d 752, 756 (9th Cir.1983).
 
 
 12
 In this case, the claims against McMinnville were settled for $4.66 million. Gulf and ISLIC agreed to contribute $2.33 million each and to subsequently resolve their respective monetary responsibilities. Awarding prejudgment interest in this case would not serve the purpose behind such awards since Gulf is not a "wronged party" entitled to prejudgment interest to compensate it for deprivation of its money. Furthermore, the exact amount that ISLIC owed was not clearly ascertainable. The district court's denial of prejudgment interest is affirmed.
 
 IV.
 
 13
 Gulf's policies cover negligent acts, errors or omissions of the insured only if these acts were (1) committed during the policy period and (2) discovered during the policy period or within twenty-four months after the termination of the policy period. According to ISLIC, the term "discovered" is ambiguous and should have been construed against the drafter. Under ISLIC's interpretation, coverage could be invoked under Gulf's policies as far back as 1976.
 
 
 14
 We affirm the district court's conclusion that the term "discovery" is not ambiguous. It requires that the insured send written notice to Gulf of an occurrence.
 
 
 15
 We also affirm the district court's finding that McMinnville was first aware of its alleged negligence in 1982 and that, pursuant to the policies' language, only Gulf's 1980-1981 and 1981-1982 policies were invoked.
 
 V.
 
 16
 The district court applied the same analysis in prorating the attorneys' fees and costs between the policies as it used to prorate the settlement amount explained in Section I supra. ISLIC appeals this proration arguing that its policy's $15 million limit included payments for attorneys' fees.
 
 
 17
 We affirm the district court's proration. In General Accident Fire & Life Assurance Corp. v. Continental Cas. Co., 287 F.2d 464, 467-68 (9th Cir.1961), the court held that Lamb-Weston's rationale applies equally to attorneys' fees and costs. "[T]he reasoning of the court in [Lamb-Weston ] on rehearing strongly points in the direction of proration as to suit expenses as well as of damages paid." 287 F.2d at 468. See also Travelers Indem. Co. v. Atlantic National Ins. Co., 227 F.Supp. 452, 455 (D.Or.1964). The district court correctly prorated the attorneys' fees and costs and is affirmed.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3