**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 17 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES FIDELITY AND
GUARANTY COMPANY,

      Plaintiff - Appellee,

v.

FEDERATED RURAL ELECTRIC
INSURANCE COMPANY,

      Defendant - Appellant.

No. 00-3018

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 98-CV-1124-WEB)**

---

Submitted on the briefs:[*]

Marc A. Powell of Powell, Brewer & Gough, L.L.P., Wichita, Kansas, for
Plaintiff-Appellee.

Michael C. Stewart of Chubbuck Smith Rhodes Stewart & Elder, P.L.L.C.,
Oklahoma City, Oklahoma, for Defendant-Appellant.

---

    [*] This panel has determined unanimously that oral argument would not
materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2);
10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

Before **KELLY,** Circuit Judge, **BRORBY** , Senior Circuit Judge, and **LUCERO** , Circuit Judge.

---

**LUCERO** , Circuit Judge.

---

Federated Rural Electric Insurance Company ("Federated") appeals a judgment by the district court requiring it to reimburse United States Fidelity and Guaranty Co. ("USF&G") for half of the defense costs expended by USF&G on behalf of their mutual insured, Alfalfa Electric Cooperative ("Alfalfa"). At the outset of this appeal, the parties presented a question of undecided Oklahoma law that implicated important state policy considerations. We therefore certified the following question to the Oklahoma Supreme Court: "Will Oklahoma apply the doctrine of equitable subrogation to require two insurance companies to share the cost of defending a mutual insured, where there is no contract between the insurance companies to do so?" The supreme court answered the question in the negative, and consequently we reverse.

## I

This litigation was sparked by a grass fire that burned across the Oklahoma and Kansas countryside. Windy and extremely dry weather combined with the hot underside of a truck to ignite a fire in Woods County, Oklahoma, that for several days burned on more than 80,000 acres in three counties. An employee for O&M Powerline Construction, Inc., ("O&M") drove the culprit vehicle over

dry vegetation during the installation of a power line pole for Alfalfa pursuant to a contract between the two companies. Not long after the fire stopped burning, affected landowners sued O&M and Alfalfa in state court. Alfalfa was insured under policies issued by two different carriers—USF&G and Federated—and that circumstance gave rise to this case.

USF&G provided the primary insurance[1] contract, according to which it promised to pay sums—with a maximum limit of $1 million—that Alfalfa became obligated to pay for property damage caused by any accident involving the use of a covered auto. Under the policy, USF&G was duty-bound to defend Alfalfa in any suit seeking such damages, but this duty ceased once USF&G paid its insurance limit.

By contrast, the Federated policy was for excess insurance.[2] It stated that "[w]ith respect to a hired or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance."[3] (Appellant's

---

[1] "Primary insurance provides immediate coverage for the insured upon the occurrence of a loss or the happening of an event which, under the terms of the policy, gives rise to immediate liability." United States Fid. & Guar. Co. v. Federated Rural Elec. Ins. Co., No. 96,172, 2001 WL 1195810, at *2 (Okla. Oct. 9, 2001).

[2] "An excess insurance policy is one which by its terms provides coverage that is secondary to the primary coverage; there is usually no obligation to the insured until the primary coverage limits have been exhausted." Id.

[3] Federated's liability was further limited by a provision entitled "Other
(continued...)

App. Doc. 6 at 55.) Like USF&G, Federated was required to defend Alfalfa in any case to which its policy applied, and like USF&G, Federated's liability for property damage was limited to $1 million.

When affected landowners sued Alfalfa in state court, Alfalfa first forwarded the summons and petition to its excess insurer Federated. Federated did not defend Alfalfa at that time and requested that USF&G, as primary insurer, undertake the defense. USF&G hired a law firm to defend Alfalfa, eventually spending $197,051 before withdrawing its defense and depositing $1 million—its maximum liability—in the district court. From that point forward, Federated funded all of Alfalfa's legal defense.

USF&G then filed a complaint in federal district court seeking declaratory relief against Federated. Specifically, USF&G sought reimbursement for the legal costs it paid before withdrawing from the state case. The district court concluded that although no contractual right to contribution existed between the

---

[3](...continued)
Insurance":

> When both this insurance and the other insurance apply to the loss on the same basis, whether primary, excess or contingent, Federated shall not be liable under the policy for a greater proportion of such loss than the applicable Limit of Liability under this policy for such loss bears to the total applicable Limit of Liability of all valid and collectible insurance against such loss.

(Appellant's App. Doc. 6 at 62.)

two insurers, USF&G was entitled to reimbursement under the doctrine of equitable subrogation.  Federated appealed that decision, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## II

When the facts are undisputed, this Court reviews the district court's interpretation of an insurance contract de novo.       Fed. Ins. Co. v. Tri-State Ins. Co., 157 F.3d 800, 802 (10th Cir. 1998).  Because this is a diversity case, the district court was required to apply the substantive law of the forum state, Kansas.  See Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency    , 174 F.3d 1115, 1118 (10th Cir. 1999).  Under Kansas choice-of-law rules, the contract law of Oklahoma, where the insurance contracts were entered into, controls.       See Safeco Ins. Co. of Am. v. Allen    , 941 P.2d 1365, 1372 (Kan. 1997).

Insurance carriers "ha[ve] the duty to use the utmost good faith in the disposition of claims made against [their] insured."       United States Fid. & Guar. Co. v. Tri-State Ins. Co.    , 285 F.2d 579, 581 (10th Cir. 1960).  "The duty to defend is separate from, and broader than, the duty to indemnify" and arises whenever the facts present "    the potential of liability    under the policy."     First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.      , 928 P.2d 298, 303 (Okla. 1996) (footnotes omitted).

At the outset of this appeal, Oklahoma law as it applied to a primary

insurer who sought reimbursement from an excess insurer for the cost of defending a common insured was, for the most part, clear. If there is no contract between the two insurers—and there is none in the instant case—there is no right to contribution. In Fidelity & Casualty Co. of New York v. Ohio Casualty Insurance Co., 482 P.2d 924 (Okla. 1971), the Oklahoma Supreme Court stated:

> "The question here thus narrows to whether contribution will lie between two insurance companies when each has a policy containing a defense agreement. The question has been answered in the negative, and we believe properly so, in a number of cases. The duty to defend is [p]ersonal to each insurer. The obligation is several and the carrier is not entitled to divide the duty nor require contribution from another [a]bsent a specific contractual right."

Id. at 926 (quoting Tri-State Ins. Co., 285 F.2d at 582). Nevertheless, the published cases did not address equitable subrogation. To the contrary, this Court in Tri-State Insurance Co. specifically stated that the plaintiff "[did] not claim by subrogation." 285 F.2d at 582.

We stayed this appeal and submitted the following certified question to the Oklahoma Supreme Court. In its answer, the Oklahoma Supreme Court held that

> under Oklahoma law an excess insurer is not obligated to bear liability for the costs of defense until the primary policy is exhausted. Accordingly, an excess insurer is not liable to the primary insurer under the doctrine of equitable subrogation for defense costs incurred prior to exhaustion, even though the claim against insured is for an amount in excess of the primary policy.

United States Fid. & Guar. Co. v. Federated Rural Elec. Ins. Corp., No. 96,172, 2001 WL 1195810, at *6 (Okla. Oct. 15, 2001).

-6-

The district court had concluded that the Oklahoma Supreme Court would probably permit an equitable subrogation claim for reimbursement of defense costs. Although there are legitimate public policy justifications for that conclusion, see United States Fid. & Guar. Co. v. Federated Rural Elec. Ins. Corp., 78 F. Supp. 2d 1172, 1176 (D. Kan. 1999) ("'[A]s a matter of public policy, courts should be demanding that insurers give prompt defense of claims to policyholders rather than to tolerate the shifting of responsibility with such impunity.'" (quoting 7C John Alan Appleman, Insurance Law & Practice § 4691, at 278 (Walter F. Berdal ed., 1979))), the district court's judgment was, in hindsight, incorrect.

### III

The judgment of the district court is **REVERSED,** and the case is **REMANDED** to the district court for such other and further proceedings consistent with this opinion.