370 So.2d 14 (1979)
LEHMAN-EASTERN AUTO RENTALS, INC., et al., Appellants,
v.
Gerald L. BROOKS, Jr., et al., Appellees.
Nos. 76-1489, 76-1490, 76-1491, 76-1543 and 76-1544.
District Court of Appeal of Florida, Third District.
February 13, 1979.
Rehearing Denied May 9, 1979.
Goodwin, Ryskamp, Welcher & Carrier and Kenneth L. Ryskamp, Jack E. Thompson & Associates, Daniels & Hicks and Sam Daniels, Miami, for appellants.
Wicker, Smith, Blomqvist, Davant, McMath, Tutan & O'Hara and Richard A. Sherman, Thornton, Conroy & Herndon and John Edward Herndon, Jr., Fowler, White, Burnett & Hurley and Henry Burnett, Knight, Peters, Pickle, Niemoeller & Flynn, Jeanne Heyward, Miami, for appellees.
*15 Before HAVERFIELD, C.J., and PEARSON and HENDRY, JJ.
HAVERFIELD, Chief Judge.
Defendants/cross-claimants, Lehman-Eastern Auto Rentals and its primary and excess liability insurers, Pan American Insurance Company and Universal Underwriters Insurance Company, appeal summary final judgments which held them liable for the full amount of a $450,000 settlement and assessing against them the costs and attorneys' fees incurred by the insurers of the other defendants in this negligence action arising out of an automobile accident. The facts giving rise to this appeal are as follows:
Debbie Stafford, an Ohio college student in participation with her political science class, made arrangements to come to the 1972 Democratic National Convention in Miami Beach. Desirous of having the use of an automobile, Stafford contacted Pete Ransom, a hometown friend of her mother, and requested that he arrange for a rental car upon her arrival in Miami. Ransom in turn asked his hometown Ohio car dealer, Howard Niggles Pontiac, to make arrangements for a rental car in Miami. Howard Niggles Pontiac contacted Lehman-Eastern Auto Rentals, reserved a rental car and forwarded $200 on behalf of Ransom who thereafter reimbursed Niggles. When Stafford arrived in Miami and went to pick up the car, Lehman-Eastern refused to deliver the car as she was under 21 years of age. Stafford was advised to get someone over 21 to come in and take delivery of the car. She enlisted the aid of a fellow student, David Kennedy, who was 21. They both went to Lehman-Eastern and Kennedy signed the rental agreement which listed Pete Ransom and Howard Niggles Pontiac as the lessees.
Thereafter, Stafford gave Mark Berman permission to use the car and while driving it Berman struck the plaintiff, Gerald Brooks, Jr. (not a party to this appeal), who sustained serious personal injuries. Brooks filed a suit for damages naming as defendants Mark Berman, Lehman-Eastern, Pete Ransom, Howard Niggles Pontiac, David Kennedy, Debbie Stafford and their liability insurers. Subsequently, Brooks settled his case for $450,000. Each of the liability insurers for the respective defendants contributed to the settlement fund as follows:
 Owner  Lehman-Eastern
 (Primary) Insurer  Pan American
 $100,000 coverage
 $ 10,000 paid toward settlement
 (Excess) Insurer  Universal Underwriters
 $1,000,000 coverage
 $ 75,000 paid toward settlement
 Driver  Berman
 Insurer  Associated Indemnity
 $100,000 coverage
 $100,000 paid toward settlement
 Lessee  Ransom
 Insurer  Mayflower Insurance Co.
 $100,000 coverage
 $100,000 paid toward settlement
 Lessee  Kennedy
 Insurer  State Auto Insurance Co.
 $100,000 coverage
 $100,000 paid toward settlement
 Lessee  Stafford
 Insurer  Buckeye Union Insurance Co.
 $1,000,000 coverage
 $ 15,000 paid toward settlement
 Lessee  Niggles
 Insurer  Buckeye Union Insurance Co.
 $300,000 coverage
 $ 50,000 paid toward settlement.
After the settlement the cross-claims of Pan American and Universal for indemnity against the other insurers and their counter/cross-claims were left to be resolved. Subsequently, the trial court entered the herein appealed summary final judgments finding that Pan American and Universal were liable for the total amount of the $450,000 settlement and the other insurers were to be indemnified for their contributions, costs and attorneys' fees. We reverse.
Pan American first contends that it has no liability because the rental agreement provides that the renter would be an insured under Lehman-Eastern's policy only if the renter has no other valid and collectible automobile liability insurance. We must reject this argument based upon the authorities cited in Executive Rent-A-Car, *16 Inc. v. Uditsky, 297 So.2d 340 (Fla.3d DCA 1974), cert. denied, 310 So.2d 742 (Fla. 1975) holding such clauses invalid.
Pan American next argues that its liability is limited to $10,000, the minimum amount required under the Florida Financial Responsibility Law. We find this point has merit.
While primary financial responsibility is placed on an owner's insurance carrier for the damages caused by the vehicle in the course of its intended use no matter who is driving, the owner and his insurance carrier may contract with the lessee to limit its liability to the statutory minimum coverage. Ins. Co. of North America v. Avis Rent-A-Car, 348 So.2d 1149 (Fla. 1977). The subject rental agreement clearly provides that the limits of liability available to the renter shall not exceed the limits of liability specified in the Florida Financial Responsibility Law (i.e. $10,000). Thus, the summary final judgment finding in effect that Pan American provided the first $100,000 in coverage (the limits of its policy with Lehman-Eastern) is erroneous and must be reversed.
Pan American also raises an additional point, whether the other insurers by virtue of the settlement agreement waived their right to deny liability.
With the exception of Associated Indemnity (Mark Berman's insurance carrier), all the remaining insurers counter/cross-claimed for indemnity on the ground that their respective insureds were not liable. If an automobile liability insurer assumes the defense of an insured and enters into a settlement agreement with knowledge of facts taking the accident or injury outside the coverage of the policy and without disclaiming liability or reserving its right to deny liability or coverage, such insurer is thereafter precluded from denying liability. See U.S. Fidelity & Guar. Co. v. Snite, 106 Fla. 702, 143 So. 615 (1932), 18 A Fla.Jur. Insurance § 815 (1971), and Cf. Pacific Indem. Co. v. California State Auto. Ass'n, 190 Cal. App.2d 293, 12 Cal. Rptr. 20 (1961). The record in the instant case is unclear as to whether the insurance carriers made any agreement (oral or written) between themselves with respect to the preservation of the liability issue upon contributing to the settlement with the plaintiff. This material issue being unresolved, summary judgment is precluded thereby.
Last, we address the argument of Universal Underwriters that the court erred in holding that the insurers for the lessees are entitled to indemnification against Universal. In support of this contention, Universal suggests that under the holding in Ins. Co. of North America v. Avis Rent-A-Car, 348 So.2d 1149 (Fla. 1977), supra, the primary level of coverage was provided by the insurers for the driver and the lessees; the secondary level of coverage was provided by the owner's insurer, Pan American; and the third level of coverage was provided by Universal. Pursuant to these priorities in coverage, Universal claims it is entitled to be indemnified by the insurers of the lessees for the $75,000 which it contributed to the settlement.
Under Ins. Co. of North America, supra, the court clearly held that the owner of the vehicle is still primarily liable at least up to the statutory limits. In the case at bar, as we have already stated above, Pan American provided the primary coverage up to $10,000. The second level of coverage then was provided by the insurer of the driver and the insurers of the lessees. Universal would then provide the third level if any excess remains. In the event that it is not necessary to reach the third level of coverage, then Universal would be entitled to indemnity from the insurers of those lessees (if any) whom the trial court determines are liable. However, Universal may be precluded from claiming indemnity if, as discussed above, Universal failed to preserve the issue of liability.
For the reasons stated, the summary final judgments herein appealed are reversed and the cause remanded to the trial court for further proceedings not inconsistent herewith.
Reversed and remanded.

ON PETITION FOR REHEARING AND/OR CLARIFICATION
*17 Before HAVERFIELD, C.J., and PEARSON and HENDRY, JJ.
PER CURIAM.
In its petition, appellant Universal Underwriters Insurance Company contends that inasmuch as it is an excess carrier and its excess policy was written with the representation that its insured, Lehman-Eastern, has underlying coverage of $100,000, none of its (Universal's) coverage is exposed until all of the underlying coverage is exhausted. In other words, Pan American (Lehman-Eastern's primary carrier) must pay out its total of $100,000 of coverage before Universal has any exposure. We find this point well taken.
As we held in our main opinion, Lehman-Eastern and its primary insurer, Pan American, are responsible for the first level of coverage with a liability limit of $10,000 (as provided in the lease agreement). The second level of coverage is provided by the driver and lessees and their liability insurers. In the event that the total amount of damages exceeds the amount of insurance available at the first and second levels of coverage, Universal argues that the third level of additional coverage of up to $90,000 would be provided by Pan American and this amount must be exhausted before Universal would be required to provide any excess coverage. We agree with this position in that Part One, Section IV[1] of Pan American's policy issued to Lehman-Eastern provides that with respect to a contingent insured (i.e. lessee) that Pan American, up to the limits of its policy (i.e. $100,000), shall be liable for the amount by which the total of the loss exceeds the sum of the limit of liability provided by all other applicable insurance. However, we repeat that Universal may be precluded from claiming indemnity if Universal failed to preserve the issue of liability. To summarize, the various levels of coverage are provided by the respective insurers as follows:
Level 1: Pam American (up to $10,000)
Level 2: Insurers for the driver and lessees
Level 3: Pan American (up to $90,000)
Level 4: Universal as excess insurer.
Petition for clarification granted.
Petition for rehearing denied.
NOTES
[1] LIMITS OF LIABILITY AND LIMITED APPLICATION OF THIS INSURANCE
"a) The limits of the company's liability under PART ONE of this policy shall be the amount by which the applicable financial responsibility limit exceeds the sum of the limits of liability under all other automobile liability insurance available to the contingent insured, separately as to bodily injury and property damage, but
"b) the insurance under PART ONE of this policy SHALL NOT APPLY TO ANY LOSS WITH RESPECT TO WHICH THE CONTINGENT INSURED IS COVERED BY ANY OTHER AUTOMOBILE LIABILITY INSURANCE, WHETHER ON A PRIMARY, CONTRIBUTORY, EXCESS OR ANY OTHER BASIS, UNLESS the total amount of the loss exceeds the sum of the limits of liability of all other policies, bonds, or plans of self-insurance affording such insurance, and then the company shall be liable, subject to (a) above, only for the excess of the loss above such insurance."